UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Brandon Kyle Ozuna,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>Commissioner of Social Security,<br><br>　　　　　Defendants. | No. 1:24-cv-00385-JLT-GSA<br><br>**FINDINGS AND RECOMMENDATIONS TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, TO AFFIRM THE COMMISSIONER'S DECISION, AND TO DIRECT ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**<br><br>(ECF No. 9, 11) |

**I.　　Introduction**

Plaintiff Brandon Kyle Ozuna seeks judicial review of a final decision of the Commissioner of Social Security denying his application for supplemental security income pursuant to Title XVI of the Social Security Act.[1]

**II.　　Factual and Procedural Background**

Plaintiff applied for benefits on April 5, 2021. The Commissioner denied the applications initially on August 31, 2021, and on reconsideration on February 8, 2022. The ALJ held a hearing on October 4, 2023. AR 33–64. The ALJ issued an unfavorable decision on October 20, 2023. AR 16–32. The Appeals Council denied review on October 30, 2023 (AR 5–10) and this appeal

---

[1] The parties did not consent to the jurisdiction of a United States Magistrate Judge. Docs. 14, 15.

1

followed.

### III. The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C.

§1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: 1- whether a claimant engaged in substantial gainful activity during the period of alleged disability; 2- whether the claimant had medically determinable "severe impairments"; 3- whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; 4- whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work; and 5- whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

**IV.   The ALJ's Decision**

At step one the ALJ found that Plaintiff did not engage in substantial gainful activity since the application date of April 5, 2021. AR 21. At step two the ALJ found that Plaintiff had the following severe impairments: **1-** degenerative disc disease, post laminectomy syndrome, and **2,** iliotibial band syndrome. AR 21. At step three, the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 21–22.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 416.967(b) with the following limitations: occasionally stoop, kneel, crouch, or crawl; occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; never work in an area that has concentrated exposure to extreme heat, cold, humidity, or wetness; never work in hazardous environments, such as working at unprotected heights or around moving mechanical parts; understand, remember, and

carry out simple instructions in the workplace. AR 23–26. At step four, the ALJ found that Plaintiff had no past relevant work. AR 27. At step five, relying on the Vocational Expert's testimony, the ALJ found that considering Plaintiff's age, education, work experience and RFC, Plaintiff could perform the following jobs existing in significant numbers in the national economy: sorter, cashier, and assembler. AR 27–28. Accordingly, the ALJ concluded that Plaintiff was not disabled since the application date of April 5, 2021. AR 28.

## V.     Issues Presented

Plaintiff asserts one claim of error: the ALJ failed to properly consider the nature and intensity of Plaintiff's limitations and failed to offer clear and convincing reasons for rejecting Plaintiff's subjective complaints. MSJ at 6, ECF No. 9.

### A.     Subjective Complaints

#### 1.     Applicable Law

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10. Subjective testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

In addition to the objective evidence, the other factors considered are: 1- daily activities; 2- the location, duration, frequency, and intensity of pain or other symptoms; 3- precipitating and

aggravating factors; 4- the type, dosage, effectiveness, and side effects of any medication; 5- treatment other than medication; 6- other measures the claimant uses to relieve pain or other symptom;  and 7- Other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. See, 20 C.F.R. § 416.929(c)(3).

### 2. **Analysis**

#### a. **Medical Evidence**

A December 2017 MRI and a January 2020 MRI showed degenerative disc disease (DDD) of the lumbar spine with various specific findings contributing to (mild) neural foraminal narrowing bilaterally.  AR 292–94.  In March 2020, Plaintiff reported several years of pain despite physical therapy and epidural steroid injections in 2013.  AR 296.

From April 2020 to April 2021, Plaintiff saw Dr. Cha monthly for management of severe low back pain which limited his ability for daily activities and enjoyment of life, and which were only partially relived with medications. AR 308, 317, 322, 332, 341, 348, 353, 358.  Plaintiff generally reported an average pain level of 6-8/10. Id.  AR 308, 312, 317, 321, 322, 331, 332, 341, 347, 348, 352, 353, 358, 366, 371, 372, 376.  On May 24, 2021, Plaintiff reported 8/10 pain the previous 24 hours, and an average pain level 5/10.  AR 303.  Dr. Cha refilled Soma, morphine sulfate and Butrans. AR 306. Plaintiff reported 30% pain relief with medication.  AR 307.

On June 22, 2021, Plaintiff reported medication was helping but he wasn't sleeping well and wasn't able to work.  AR 454.  He reported 30–50% pain relief, and that pain precludes enjoyment of life. AR 453.  On July 21, 2021, Plaintiff reported 8/10 pain, with lowest pain level of 6/10, and that it precluded activity, mood, work, sleep, relationships and life enjoyment.  AR 447.  Dr. Cha continued Soma, morphine sulfate, and Butrans. AR 451.  On August 21, 2021, Butrans was increased, morphine and soma were continued. AR 441.  Plaintiff reported poor sleep, increased evening pain and significant interference with regular activities and enjoyment of life. AR 438. On September 17, 2021, Butrans was increased again and he was continued on opioids. AR 433. Butrans were increased again on October 15, 2021, but stopped on November 15, 2021 due to side effects. AR 421, 428.  Plaintiff's reported pain levels and functional limitations were unchanged, and he was referred for EMG testing.  AR 418, 422, 424.  On January 12, 2022, opioids

were continued for various types of pain at level 9/10, with 40% improvement from medications. AR 406.  Plaintiff saw Dr. Cha and FNP Holt throughout 2022 for pain of the low back, pelvic obliquity, bilateral syndrome of the piriformis and IT band, S1 radiculopathy, paresthesia, and weakness.  AR 402, 409, 507, 512, 522, 527, 532, 537, 542.

Plaintiff generally had at most 40% relief with opioids yet his pain continued to interfere with virtually all functions and precluded enjoyment of life.  AR 400, 403, 404, 504, 505, 509–10, 514–15, 529, 524, 528, 534-35, 539, 543, 547–48.  From January to August 2023, Plaintiff reported pain levels often averaging 8/10.  AR 459-60, 464, 469, 474, 479, 484, 489, 494, 499.  Plaintiff's pain largely remained unchanged.  AR 459-503.

### b.    **Subjective Complaints**

Plaintiff reported medications made him drowsy and unreliable. Ar. 249.  He does little activity, struggles to get through the day and can hardly complete self-care by the end of the day due to severe pain. AR 249.  He cannot lift much and even carrying groceries can incapacitate him.  AR 250.  He can sit and do household chores for an hour before severe sciatic pain ensues.  AR 250-51.  He rests during the day, naps for 2 hours, uses a cane, walker or wheelchair when the pain causes weakness.  AR 251.  He takes opioids and soma as there is no surgical treatment available.  He has had epidurals, physical therapy, and chiropractic treatment.  AR 251.

A December 2021 questionnaire reported similar symptoms.  AR 260.  He minimally walks and mostly stays in bed or on the couch.  AR 260.  He could lift only small  objects.  AR. 261.  He does not shop, clean, do chores, and drives only as needed.  AR 261.  He takes daily narcotics.  He can't work due to pain and medication side effects including daily narcotics which causes drowsiness.  AR 44.  He can sit and stand for one hour before severe sciatic pain after which he needs to change positions, lay down or use the inversion table, which would not be acceptable in a work situation.  AR 46.  He  spends about two-thirds of each day lying down.  AR 48.  He could walk for 20 to 30 minutes.  He can lift and carry up to 40 pounds at one time, but he could only do so two or three times at most and not regularly.  AR 47–48.  He could probably regularly carry 20 pounds.  AR 48.  He drives up to 5 times a month, but not more than 15 miles to the doctor or family.  AR 42-43.

### c. **Discussion**

Factual and legal recitation aside, Plaintiff's analysis spans 3 pages. Plaintiff does not dispute the accuracy or completeness of the ALJ's summary of his subjective complaints, though Plaintiff appropriately observes that this summary does not constitute an analysis, much less a clear and convincing one. MSJ at 7; Lambert v. Saul, 980 F.3d 1266, 1278 (9th Cir. 2020); (quoting Brown-Hunter v. Colvin, 806 F.3d 487, 494 (9th Cir. 2015)) (Explaining that a "detailed overview of...medical history" is insufficient).; Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001)) ("[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony.")

As to the ALJ's articulated basis for rejecting his subjective complaints, Plaintiff takes issue with the ALJ's observation that there were no changes to imaging between 2017 and 2020. MSJ at 8. Plaintiff is correct in asserting that the severity of the imaging abnormalities and their impact on pain and function is what is at issue, not the changes (or lack thereof) of the imaging findings over time.

However, the severity of the imaging abnormalities undermines complaints of extreme, incapacitating pain. Relevantly, a December 2017 MRI showed diffuse annular disc bulge and fissure at L4-L5; disc desiccation at L5-S1; and disc desiccation at L5-S1 with a disc and annular fissure extruding posteriorly and contributing to mild thecal sac compression and neural foraminal narrowing bilaterally. AR 292. Thereafter, a January 2020 MRI confirmed disc protrusions with annular fissures similar to prior imaging with bilateral neural foraminal narrowing at L4-5 and L5-S1. AR 294. As of March 2020, Plaintiff reported that his pain had persisted for several years despite physical therapy and epidural steroid injections in 2013. AR 296.

These MRI findings are recited by Plaintiff and are reflected in the "Findings" section of the radiology report which contained similarly extensive esoteric descriptions of abnormal spinal pathology with little meaning to a layperson.

However, Plaintiff omits the radiologist's encapsulation of these lengthy findings as reflected in the impression. The impression states that at L4-L5, "These processes contribute to mild narrowing of the bilateral neural foramen." AR 292 (emphasis added). Similarly, at the L5-

S1 vertebral segment, after summarizing the detailed findings, the impression reflects that "These processes contribute to <u>mild thecal sac compression</u>. These processes also contribute to <u>mild neural foraminal narrowing bilaterally</u>." Id. (emphasis added).

<u>Mild</u> bilateral foraminal narrowing at L4-L5 and L5-S1, and <u>mild</u> thecal sac compression at L5-S1, do not support severe sciatic nerve impingement or incapacitating radicular/sciatic pain.

Importantly, Plaintiff does not address a justification the ALJ offered, namely:

> Examinations during the period at issue showed reduced lumbar range of motion (Exhibit 7F). <u>However</u>, examinations also showed no acute distress; <u>normal gait and posture</u>; normal grip strength; normal cervical range of motion; <u>negative straight leg raise</u>; <u>normal lumbar range of motion</u>; normal range of motion in his bilateral shoulders, <u>hips, and knees</u>; normal strength <u>in all extremities</u>; and intact sensation (Exhibit 5F; 6F; 7F). Additionally, during his consultative evaluation in August 2021, the claimant had <u>no back pain with knee extensions</u> (Exhibit 6F). Further, during his consultative evaluation in January 2022, the claimant was able to get up and out of his chair<u>, walk around the examination room</u>, and get on and off a bench without difficulty. The claimant <u>was also able to get up on his heels and toes, squat down and take a few steps while squatting, and satisfactorily tandem walk</u> (Exhibit 7F).

AR 24 (emphasis added).

To the extent Plaintiff is implying that this discussion solely amounts to a summary of medical evidence, the argument is not persuasive. Admittedly, the ALJ invites a bit of criticism by citing findings such as normal grip strength and cervical range of motion, which are not relevant to Plaintiff's allegedly incapacitating radicular sciatic nerve pain in his lower extremities and associated physical limitations.

However, Plaintiff does little to address more relevant findings such as normal lumbar range of motion, strength, sensation, gait and <u>negative straight leg raise</u> (a sciatic nerve pain provocation test). These statements were not mere recitation as the ALJ clearly juxtaposed normal findings from abnormal findings and implied that the latter were more numerous and more representative. It is not sufficient for Plaintiff to simply dismiss the ALJ's discussion as being merely a summary of evidence as opposed to analysis. See <u>Wilson v. Berryhill</u>, 757 Fed. Appx. 595, 597 (9th Cir.

2019) (ALJ's path need only be reasonably discernable, not a model of clarity); Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989) (court may draw reasonable inferences from the ALJ's decision).

The only finding Plaintiff seems to squarely acknowledge is that he was often noted to be in no acute distress. Plaintiff appropriately explains in his reply brief that "no acute distress" is essentially a meaningless finding, especially as it concerns chronic pain. Mitchell v. Berryhill, 2020 WL 1017899 (D. Nev. Feb. 28, 2020) ("Moreover, the court agrees with Plaintiff that notations that Plaintiff was healthy 'appearing' and in no 'acute' distress do not distract from the findings regarding Plaintiff's chronic conditions."); citing Richard F. v. Comm'r of Soc. Sec., 2019 WL 6713375, at *7 (W.D. Wash. Dec. 10, 2019) ("Clinical findings of 'no acute distress' do not undermine Plaintiff's testimony. 'Acute' means 'of recent or sudden onset; contrasted with chronic.' Oxford English Dictionary, acute (3d ed. December 2011)).

Further to Plaintiff's point, the Commissioner's resistance to that concept is somewhat perplexing, however it is of limited consequence as it was only one clinical finding of many benign findings the ALJ relied on.

Plaintiff further disputes the ALJ's finding that Plaintiff's care was conservative. MSJ at 8 (citing AR 24). Plaintiff underwent a laminectomy and was treated with epidural steroid injections with minimal relief. AR. 296; 393. However, there is no suggestion in the record that additional more aggressive procedures were indicated, though Defendant notes that Plaintiff did decline to undergo an EMG on more than one occasion which may have revealed additional and/or corroborative abnormalities warranting more aggressive treatment. AR 53-55; 332, 415-16, 421-22). Speculation aside, the lack of aggressive treatment does not undermine the existence of severe symptom where the record does not suggest that more aggressive treatment was warranted or available. See Brown v. Colvin, ED CV 14-101-E, 2014 WL 5330722, at *3 (C.D. Cal. Oct. 20,

2014), ED CV 14-101-E, 2014 WL 5330722, at *3 (C.D. Cal. Oct. 20, 2014).

Next, Plaintiff disputes the ALJ's suggestion that Plaintiff's conservative care was effective, and noted one occasion where Plaintiff reported 50% symptom relief with medications. Ar. 24. Plaintiff contends this improvement was temporary and short-lived, explaining as follows:

> As detailed above, while Plaintiff often reported 30%-40% pain relief with medications, this simply meant that his pain was 9/10 in severity in general, and medications reduced his pain level to about 6, while his average pain level remained about a 7-8/10 on a daily basis. The ALJ is required to evaluate a claimant's ability to work on a sustained basis, accounting for his limitations throughout the day . . . Further, the severity of pain experienced is subjective, and even experiencing 50% relief of pain does not mean that pain is "controlled." . . . Notably, consistent with Plaintiff's report of only 30%-40% pain relief with medications and an average pain level of 7-8/10, Plaintiff consistently reported pain nevertheless almost completely interfered with functioning with respect to general activity, home or housework, social relations, sleep, and enjoyment of life. Ar. 504, 509, 514-15, 519, 524, 534-35, 539. The ALJ therefore failed to show that the partial, temporary relief from medications is inconsistent with Plaintiff's allegations. The ALJ notes that Plaintiff's pain relief was described as "clinically significant," and made a real difference in functioning. However, the clinical significance was simply that pain was reduced from 9/10 to 6/10 to permit some modest daily functioning, and Plaintiff consistently reported significant interference in daily activities due to pain.
>
> Plaintiff furth explains that "Occasional symptom-free periods—and even the sporadic ability to work—are not inconsistent with disability." Id, citing Leidler v. Sullivan, 885 F.2d 291, 292 n. 3 (5th Cir.1989).

The argument is likewise not persuasive. First, in his factual summary Plaintiff explained that from April 2020 to April 2021 he treated with Dr. Cha where he generally reported an <u>average pain level of 6-8/10 which significantly interfered with his daily activities</u>. MSJ at 2 ( AR 308, 312, 317, 321, 322, 331, 332, 341, 347, 348, 352, 353, 358, 366, 371, 372, 376. However, this date range of April 2020 to April 2021 is almost entirely before the beginning of the relevant period of April 5, 2021, the day he filed his SSI application.

Plaintiff acknowledges that on May 24, 2021, he reported his pain reached 8/10 in severity in the past 24 hours, but <u>his average pain level was 5/10</u> (as compared to an average of 6 to 8) during the preceding year which preceded the relevant period). AR 303. Further, despite the qualifier that Plaintiff's 5/10 average pain level was over the previous 24 hours, as the ALJ and

Defendant noted, Plaintiff also reported that his improvement was "enough to make a real difference in his life," AR 24, 303. This does not suggest "sporadic improvement" as Plaintiff contends, but suggests the relief was sustained more than 24 hours. An average pain level of 5/10 (moderate pain), though not trivial, is arguably not so debilitating that it would render Plaintiff incapacitated. To this point, the RFC is not a representation of the most a claimant can do while remaining symptom free, rather it is "the most you still do despite your limitation." 20 C.F.R. § 416.945(a)(1).

Later records, as summarized in detail above based on Plaintiff's recitation of the same, note pain relief between 30% and 50%, for an average of roughly 40%. AR 307 (30%); AR 453 (30-50%); AR 406 (40%); Ar. 400, 505, 509-10, 515, 529, 539 (40%); AR 399 (30-40%). As to Plaintiff's worst pain levels of 8-9/10, Plaintiff cites no evidence—subjective, objective, or otherwise---as to the frequency or duration of these episodes of incapacitating pain. Average pain estimates ranging from 5 to 6 out of 10 is considered moderate pain on the Visual Analogue Scale (VAS). Again, moderate pain, although not trivial, does not support incapacitating pain rendering plaintiff bed ridden or unable to perform the modest demands of light exertional work.

As to Plaintiff's worst pain levels of 8-9 out of 10, he identifies no testimony or other subjective statements indicating that he experiences his worst pain during working hours or for a significant period of time. To the contrary, some records suggest his worst pain was in the evening as opposed to working hours. AR 438.

Further, the weight-lifting demands of light exertional work as reflect in the RFC (10 pounds frequently and 20 pounds occasionally, SSR 83-10) is consistent with Plaintiff's own estimation of his weight-lifting ability, namely that he can lift and carry up to 40 pounds sporadically and could regularly carry 20 pounds. AR 47–48. An RFC for light exertional work requires no more than 20 pounds of lifting and carrying.

Plaintiff also disputes the ALJ's reliance on his activities of daily living. The ALJ explained:

> During the period at issue, the claimant reported that he did not need support to take care of self-dressing, self-bathing, or his personal hygiene. At the time of his consultative evaluation in August 2021, the claimant was able to household tasks,

11

> shop, and cook. However, during his consultative evaluation in January 2022, the claimant reported that he was not able to do heavy yard work, vacuuming, mopping, taking out trash, laundry, or dishes. The claimant was also able to manage his finances and medications independently and go out by himself (Exhibit 5F; 7F).

AR 24.

Plaintiff contends, "However, the ALJ failed to explain how his limited activities are inconsistent with Plaintiff's alleged symptoms. Ghanim v. Colvin, 763 F.3d 1154, 1160 (9th Cir. 2014) (finding that daily activities may contradict assertions of disabling symptoms 'if a claimant is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.')"

However, Plaintiff's quotation from Ghanim only identifies one of the two reasons an ALJ may rely on in rejecting subjective complaints, as set forth in Orn. An ALJ may rely on a claimant's daily activities if: **1**- the daily activities contradict the claimant's other testimony; or **2**- "a claimant is able to spend a substantial part of [his/her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007).

Thus, Plaintiff's activities of daily living do not need to support the ability to perform work activities on a sustained basis if they contradict other subjective statements. Here, the ALJ drew a distinction between Plaintiff's activity level as reported at his first and second consultative examinations, even though neither one necessarily supports an ability to perform work related activities on a sustained basis. See Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (finding the ALJ satisfied the "clear and convincing" standard for an adverse credibility determination where claimant engaged in "gardening and community activities . . . evidence [which] did not suggest Valentine could return to his old job," but "did suggest that Valentine's later claims about the severity of his limitations were exaggerated.").

Here, the opinions of the two consultative examiners, Drs. Stoltz and Van Kirk, supported

the ALJ's decision. In August 2021, Dr. Stoltz examined Plaintiff and opined that he had no limitations on his ability to stand, walk, or sit; that he could lift and carry 10 pounds frequently and 20 pounds occasionally; and that he had no postural, manipulative, or environmental limitations (Exhibit 6F). In January 2023, Dr. Van Kirk examined Plaintiff and opined that he could perform medium work and could frequently perform postural activities. (Exhibit 7F).

## VI. Conclusion

In sum, the ALJ's rejection of Plaintiff's subjective complaints and the ALJ's formulation of the resulting RFC, were supported by clear and convincing reasons including: 1- objective medical evidence of relatively benign physical exams (normal lumbar ROM, negative straight leg raise among others); 2- the claimant's own subjective statements about his pain improvement with medication (5 to 6 out of 10 on average, with his pain reduction described as clinically significant and resulting in "enough to make a real difference in his life," and little information about the frequency and duration of incapacitating pain episodes at level 8-9 out of 10); 3- MRI imaging describing <u>mild</u> thecal sac compression and <u>mild</u> neural foraminal narrowing bilaterally; 4- the consultative examining opinions of Drs. Stoltz and Van Kirk that Plaintiff could perform light to medium work; and finally, 5- Plaintiff's varying reports about his activities of daily living to the two consultative examiners.

## VII. Recommendations

For the reasons stated above, substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled. Accordingly, the recommendation is as follows:

1. That Plaintiff's motion for summary judgment (Doc. 9) be **DENIED.**
2. That Defendant's cross-motion (Doc. 11) be **GRANTED.**
3. That the decision of the Commissioner of Social Security be **AFFIRMED**.
4. That the Court Clerk of Court be directed to enter judgment in favor of Defendant

13

Commissioner of Social Security and against Plaintiff.

**VII.     Objections Due Within 14 Days**

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:     **October 10, 2025**              **/s/ Gary S. Austin**
                                                          UNITED STATES MAGISTRATE JUDGE