**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Brandon Kyle Ozuna, | Case No.  1:24-cv-00385 JLT GSA |
| Plaintiff, | ORDER DECLINING TO ADOPT FINDINGS AND RECOMMENDATIONS, GRANTING PLAINTIFF'S MOTION, DENYING DEFENDANT'S REQUEST TO AFFIRM, AND REMANDING |
| v. | |
| Commissioner of Social Security, | |
| Defendant. | (Docs. 9, 11, 17) |

Brandon Ozuna unsuccessfully applied for Social Security benefits.  The agency denied his applications after a hearing before an Administrative Law Judge, who issued a written opinion, after which the Appeals Council denied Plaintiff's request to review the ALJ's decision. Ozuna then sought review in this Court.  (Doc. 1.)  He argues the ALJ wrongly rejected his testimony about the severity of his pain, and he seeks summary judgment on the administrative record and a remand for further proceedings.  (Doc. 9 at 6).  The defense filed an opposition and requests an order affirming the agency's decision.  (Doc. 11.)

The matter was referred to the assigned magistrate judge under this District's Local Rules. The magistrate judge has prepared Findings and Recommendations addressing Plaintiff's argument.  (Doc. 17.)  The magistrate judge recommends denying plaintiff's appeal, affirming the agency's determination to deny benefits, and entering judgment in favor of defendant.  (*Id.* at 13–

1

14.)  The Court served the Findings and Recommendations on the parties and notified them that any objections were due within fourteen days.  (Doc. 17 at 14.)  Plaintiff filed objections (Doc. 18), and Defendant responded (Doc. 20).  The court has reviewed the matter de novo, declines to adopt the Findings and Recommendations, and remands the matter to the agency for further proceedings, as explained below.

## STANDARD OF REVIEW

A district court can set aside an ALJ's denial of benefits if it "is not supported by substantial evidence."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).  An ALJ's decision is not supported by substantial evidence if the ALJ has improperly rejected the claimant's subjective description of his pain.  *Id.*  The proper analysis of a claimant's credibility takes place in two steps.  First, the ALJ must decide whether the claimant has offered objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain.  *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014).  If the claimant offers the necessary evidence, and if there is no evidence of malingering, then the ALJ can reject the claimant's testimony only "by offering specific, clear and convincing reasons for doing so."  *Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2024) (quoting *Garrison*, 759 F.3d at 1015).  In other words, the decision to reject a claimant's testimony about his pain is not supported by "substantial evidence" if the ALJ does not offer "specific, clear, and convincing reasons" to reject that testimony.  *See id.*

This standard of review—for specific, clear, and convincing evidence—"is the most demanding" of any that applies in Social Security cases.  *Id.* (quoting *Garrison*, 759 F.3d at 1015).  It requires ALJs "to show their work."  *Id.* (alteration omitted) (quoting *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022)).  The question is not whether the ALJ's reasoning is persuasive to the reviewing court, *Smartt*, 53 F.4th at 499, nor whether the court can identify any support for the ALJ's conclusions within the administrative record, *see Ferguson*, 95 F.4th at 1203.  The ALJ's reasoning must stand or fall on its own terms, *see id.*, and it must be "clear enough that it has the power to convince," *Smartt*, 53 F.4th at 499.

/////

2

**DISCUSSION**

Ozuna alleges that sciatica, herniated discs, and numbness in his back limit his ability to work.  (AR 23, 45.[1])  He has pain in his lower back and burning pain in his legs.  (AR 24.)  He testified that for about six or seven days per month his pain is so debilitating that he stays "in bed all day except to use the restroom or grab food or water."  (AR 45.)  In general, he does not often leave the house, and his pain limits his ability to sit, stand, and walk for long periods.  (AR 23, 44–49.)  He usually lies down for about two-thirds of every day.  (AR 49.)  He uses pain medications, but they cause digestive problems and make him dizzy and "very, very tried."  (AR 45, 49.)

The ALJ found at the first step that Ozuna's impairments could reasonably be expected to produce the symptoms he described.  (AR 24.)  Moving then to the second part of the credibility test, ALJ found Ozuna's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record."  (*Id.*)  The Court interprets this statement as a finding that the record included evidence that conflicted with Ozuna's testimony and claims.  The ALJ cited three categories of evidence, but the ALJ's written opinion does not offer the necessary "specific, clear, and convincing reasons" why this evidence was inconsistent with Ozuna's testimony.

First, the ALJ cited "normal examination findings" in Ozuna's medical records.  (AR 25.)  Objective medical evidence can undercut a claimant's testimony if that evidence contradicts the testimony or is inconsistent with it.  *See Smartt*, 53 F.4tgh at 498 (collecting authority).  But "an ALJ cannot insist on clear medical evidence to support each part of a claimant's subjective pain testimony when there is no objective testimony evincing otherwise."  *Id.*  "[T]he ALJ must provide specific, clear, and convincing reasons which explain why the medical evidence is *inconsistent* with the claimant's subjective symptom testimony."  *Ferguson*, 95 F.4th at 1200 (emphasis in original).

Some of the ALJ's findings in Ozuna's case seem quite irrelevant to claims of debilitating

---

[1]  Citations in this format refer to the administrative record (Docs. 8-1, 8-2) and use the page numbers on the bottom right of each page.

lower back and leg pain.  For example, the ALJ cited Ozuna's normal "grip strength" and "cervical range of motion."  (*Id.*)  Other findings cited in the ALJ's written opinion could potentially have been relevant for assessing Ozuna's credibility.  For example, the ALJ cited "normal range of motion in [Ozuma's] joints" and normal sensation in his extremities.  (*Id.*)  But the ALJ again left a great deal for the reader to fill in, such as why a normal range of motion in specific joints or normal sensation in specific extremities casts doubt on a claim of back or leg pain or its frequency.  (*Id.*)  By contrast, some of the findings the ALJ cited do seem quite directly related to claims of lower back and leg pain.  That is true, for example, of Ozuna's observed "ability to squat, get up and out of a chair, and get on and off a bench" and a negative straight leg raise test in medical examinations.  (*Id.*)  But even here, the ALJ did not connect the various "normal" examination findings to Ozuna's testimony and claims of pain.  He did not explain why, for example, Ozuna's ability to get up out of a chair during a medical examination casts doubt on his claims that his pain forces him to stay in bed all day on some days, but not every day.  In short, the ALJ did not "show [his] work."  *Smartt*, 53 F.4th at 499.

In this respect, the ALJ's decision is similar to the administrative opinion the Ninth Circuit evaluated in *Ferguson v. O'Malley*.  The claimant in *Ferguson* testified that he had debilitating headaches that lasted as long as two days and could occur as frequently as twice or three times per week.  95 F.4th at 1198.  The ALJ found these claims were not credible because in a medical exam, the claimant had exhibited "no neurological defects" and had been in a "normal mood."  *Id.* at 1200.  The ALJ "did not explain . . . how the absence of neurological defects and a normal mood during a medical exam are inconsistent with . . . testimony about the severity and frequency of . . . headaches."  *Id.*  That ALJ had not cited, for example, evidence showing a person "cannot experience severe and frequent headaches in the absence of neurological defects."  *Id.*  "[A]t step two of the symptom analysis," the Circuit wrote, "the ALJ cannot rely on an *absence* of positive medical evidence to discredit a claimant's subjective symptom testimony."  *Id.* (emphasis in original).  The same reasoning shows why the ALJ's discussion of "normal" examination findings do not suffice in Ozuna's case: it does not specifically, clearly, and convincingly connect the examination findings to Ozuna's testimony.

4

In the second category of evidence, the ALJ cited Ozuna's "generally conservative treatment and positive response to treatment during the period at issue." (AR 25.)  It is true in general that "a conservative course of treatment can undermine allegations of debilitating pain." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).  "In the case of a complaint of pain," a person's failure to seek treatment "may be probative of credibility, because a person's normal reaction is to seek relief from pain, and because modern medicine is often successful in providing some relief." *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).  But an ALJ cannot reject a claimant's testimony based on a conservative course of treatment if "the claimant has a good reason for not seeking more aggressive treatment." *Id.*  A stronger medication might have greater adverse side effects, or it might not be covered by the claimant's medical insurance plan. *See Carmickle*, 533 F.3d at 1162.  Here, the ALJ did not explain what additional or more effective treatment Ozuna turned down or could have obtained, nor why his use of any particular medical treatment casts doubt on his claims of debilitating pain.  Nor did the ALJ account for Ozuna's explanation that his condition "is not treatable by any surgical means currently" (AR 251) and his attorney's statement at the hearing that "because of his age, the doctors do not want to do surgery" (AR 41).

The ALJ also referred to Ozuna's reports that at one point, medication had reduced his symptoms by as much as half, was "enough to make a real difference in his life," and offered "clinically significant" relief. (AR 24.)  But the ALJ did not explain why a positive response to medical treatment undercut Ozuna's testimony about his ongoing pain and its effect on his ability to work.  The ALJ did not consider whether Ozuna's claims of debilitating pain could be credible even if medications provided relief, nor whether Ozuna could work while taking those medications, given their side effects. (*See* AR 45.)

The third category of evidence the ALJ relied on to explain why Ozuna's testimony was not credible relates to his day-to-day life, his "activities of daily living," which the ALJ believed were "not consistent" with the limitations Ozuna described. (AR 25.)  The Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude

work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Ferguson*, 95 F.4th at 1203 (quoting *Garrison*, 759 F.3d at 1016).  A given level of activity has no bearing on a claimant's credibility unless that level of activity is "inconsistent with [the] claimed limitations." *Ferguson*, 95 F.4th at 1203 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

The ALJ cited Ozuna's testimony that he could dress himself, bathe himself, and care for his own personal hygiene.  (AR 24.)  The ALJ also cited his ability to complete "household tasks, shop, and cook," but noted he could not do "heavy yard work, vacuuming, mopping, taking out trash, laundry, or dishes." (*Id.*)  Finally, the ALJ cited Ozuna's ability to "manage his finances and medications independently and go out by himself." (*Id.*)  Again, however, the ALJ did not explain why Ozuna's ability to complete these activities casts doubt on his claims about his pain. In the absence of an explanation, the Court also perceives no reasonable inference of an inconsistency.  A person who suffers intermittently from debilitating pain and the side effects of pain medications can reasonably be expected to bathe himself, complete simple household tasks, and manage his own finances and medications, among other similar day-to-day tasks.

This aspect of the ALJ's opinion again resembles the administrative opinion the Ninth Circuit evaluated in *Ferguson*.  In that case, as in this one, the ALJ did not explain how the claimant's testimony about his ability to drive, go out, care for himself, and complete simple household tasks was "inconsistent with his testimony about the severity and frequency of his [pain]."  95 F.4th at 1203.  Like Ozuna, the claimant in *Ferguson* testified that when he is in pain, it prevented him from doing almost anything, but not always.  *Compare id.* ("Ferguson testified that when he experiences headaches, he does not get out of his room, and he does nothing." (quotation marks omitted) *with* AR 45 ("There are several days where yes, I am in bed all day except to use the restroom or grab food or water.").

The Court therefore cannot conclude on this record that the ALJ's written opinion offers "specific, clear, and convincing" reasons to find Ozuna's claims about his pain were not credible. The Court acknowledges, as the magistrate judge documented thoroughly in the Findings and Recommendations, that other portions of the administrative record may very well cast doubt on

Ozuna's credibility when it comes to the severity of his symptoms and his ability to work.  (*See, e.g.*, Doc. 17 at 10–11, 12–13 (discussing historical pain levels, pain management efforts, ability to carry weight, and opinions of medical experts).)  It is error, however, to affirm the agency's decision "for a reason the ALJ did not assert."  *Ferguson*, 95 F.4th at 1203–04.  The ALJ relied only on the three categories of evidence discussed above.  He did not explain his decision to reject Ozuna's subjective testimony by analyzing changes in Ozuna's specific pain levels or by contrasting Ozuna's testimony with the opinions of medical experts.

This Court must also refrain from making "independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).  The most appropriate resolution in these circumstances is to remand this matter for the agency to consider these portions of the record in the first instance. *See id.* at 496 ("[M]edical reports of adequate pain control on medication . . . create a significant factual conflict in the record that should be resolved through further proceedings on an open record before a proper disability determination can be made by the ALJ in the first instance.").

**CONCLUSION**

For these reasons, the Court **ORDERS** as follows:

1. The Court **DECLINES TO ADOPT** the Findings and Recommendations (Doc. 17).

2. Plaintiff's motion for summary judgment (Doc. 9) is **GRANTED**.

3. Defendant's request to affirm the administrative decision (Doc. 11) is **DENIED**.

4. This matter is **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g), consistent with this order.

5. The Clerk of the Court is **DIRECTED** to terminate any pending motions; enter judgment in favor of Plaintiff and against Defendant; and to close this case.

IT IS SO ORDERED.

Dated:  **January 30, 2026**

UNITED STATES DISTRICT JUDGE

7